**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSEPH PLOWDEN,<br><br>    Defendant. | Criminal No. 10-331 (RMB)<br><br>**OPINION** |

Defendant Joseph Plowden entered a negotiated plea agreement with the Government on November 15, 2010, under which he pled guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Subsequent to his plea, the Probation Office issued a pre-sentence report, in which it recommended a sentencing enhancement under U.S.S.G. §2K2.1(b)(6) based on its finding that Defendant possessed the firearm at issue in connection with another felony offense, possession of crack cocaine. Defendant objects to the enhancement. For the reasons that follow, the Court agrees with the Probation Office's finding and will apply the sentencing enhancement.

**I.    Background**

    A.    Defendant's Arrest And Guilty Plea

According to a police report of Defendant's arrest, Defendant was riding his bicycle in Camden, New Jersey at 2:25pm, on November 24, 2009, when he was recognized by a police officer as the subject of criminal bench warrants.  That officer, and his partner, approached Defendant, who promptly fled on his bicycle.  After giving pursuit, and arresting Defendant, one of the officers performed a pat search of Defendant, discovering a loaded .38 caliber revolver, as well as two clear sandwich bags, one containing 49 blue heat sealed plastic bags and the other containing 9 clear heat sealed plastic bags.  While all 58 of these bags contained a rock like substance, suspected to be crack cocaine, subsequent lab testing revealed otherwise.  The blue bags had no traces of crack cocaine.  The clear bags contained approximately 0.27 grams of crack cocaine. While Defendant was initially charged with, among other things, possession of cocaine with the intent to distribute, Defendant subsequently pled guilty to just one count of felon in possession of a firearm.

    B.    The Pre-Sentence Report And The Court's 9/16/2011 Hearing

Following Defendant's plea, the Probation Office issued a pre-sentence report recommending the sentencing enhancement described above.  After receiving the pre-sentence report, Defendant submitted a letter objecting to the application of the enhancement.  In response to Defendant's objections, and to aid it in determining the applicability of the sentencing enhancement

at issue, the Court convened a hearing on September 16, 2011, at which the 58 plastic bags were presented to the Court for its examination and, at which, Drug Enforcement Agency (D.E.A.) Special Agent David McNamara testified.

Agent McNamara, a 19-year D.E.A. veteran, with experience in Camden, New Jersey, as well as New York City and Washington, D.C., testified that, while Defendant was not observed engaging in drug sales, the circumstance of his arrest were more consistent with drug possession for the purposes of drug trafficking than for personal use.  Agent McNamara explained that several factors supported this conclusion:

> (1) the large number of bags resembling, but not actually, crack cocaine and the color coded differentiation between the real (clear) and fake (blue) bags, was consistent with a drug trafficker selling fake crack cocaine, in addition to real crack cocaine, a phenomenon Agent McNamara had previously observed in Camden[1];

---

[1] "Those are the baggies that I was talking about that are typically colored, and that's the way the distribution occurs for crack cocaine."  Hr'g Tr. at 10.

"Although on appearance, aside from the different colored bags, from what I could tell it looked very much like crack cocaine.  It's something that we see in the City of Camden, individuals involved in the sale of drugs trying to make extra money by selling fake drugs . . . ." Hr'g Tr. at 7.

"And even though it's just these nine baggies [of real crack cocaine], it's more consistent with distribution on the streets of Camden, not personal use. . . . I mean, the 49 blue baggies of fake cocaine adds to the conclusion that I draw about the nine." Hr'g Tr. at 22.

(2)   the packaging and size of the bags, which would allow easy and speedy distribution of fake and real drugs[2];

(3)   the quantity of crack cocaine, which under the totality of the circumstances, was indicative of drug trafficking[3];

(4)   the fact that Defendant was found riding his bike, as it would enhance his mobility - an important consideration for someone selling fake drugs who must

---

[2]   "Commonly when drugs are sold at the retail level, which this is what it appeared to be, the drug transactions occur very, very quickly. Money is exchanged and a bag or several bags are exchanged, and that's the distribution process." Hr'g Tr. at 8.

"The actual baggies, your Honor, they're very small . . . ." Hr'g Tr. at 10.

"When the deal happens, that's something that you won't want to do out in the open in case anybody is watching, the exchanges are very quick, they almost look like handshakes." Hr'g Tr. at 8.

"The packaging -- the packaging . . . it's more consistent with distribution on the streets of Camden, not personal use." Hr'g Tr. at 21-22.

"And that's why distinctively it's not that there is a mix of real and fake in the two different colored heat sealed bags; the blue ones, apparently, are the fake ones and the clear heat sealed bags, those are the real ones. So as the sales are being made, the seller can determine quickly, here, I'm going to give this user, for whatever reason -- there is a myriad of reasons to make them decide to either sell real or fake -- they can make their decision based on which bag they hand the person." Hr'g Tr. at 14.

[3]   "[A] [t]ypical [hit of] crack can be anywhere from .06 to maybe .1 grams of crack cocaine. It's a very small amount, less than the [0.27]." Hr'g tr. at 22.

>    quickly leave a "set" where drugs are sold or face angry customers[4]; and
>
> (5) the Defendant's carrying of a gun, which would also facilitate the protection of an individual selling drugs - real or fake.[5]

On cross-examination by Defense counsel, counsel elicited Agent McNamara's admission that Defendant was not found with "buy money" - cash from previous drug sales, a usual attendant of drug trafficking. Agent McNamara also acknowledged on cross-examination that drug traffickers often employ another individual to handle cash, but that Defendant was not observed working with another individual in this manner.

## II. Analysis

U.S.S.G. §2K2.1(b)(6) authorizes at least a four level offense level increase[6] based on the defendant's use or possession of any firearm or ammunition in connection with another felony offense. "Proper application of the . . . enhancement . . . requires finding, by a preponderance of the

---

[4] "For example, the defendant apparently was on a bicycle. That's a very mobile way, because once a seller who is doing this, who is defrauding users, once the sale goes through . . . the buyer might come back . . . So mobility is important." Hr'g Tr. at 13.

[5] "It's not uncommon for individuals doing that to possesses weapons to make sure they protect themselves while doing that distribution, both real and fake." Hr'g tr. at 18.

[6] If the resulting offense level is less than 18, it is automatically increased to 18.

5

evidence:" (1) that the defendant used or possessed a firearm; (2) that the defendant committed another felony offense, regardless of whether a criminal charge was brought or a conviction obtained; and (3) that the firearm was used or possessed in connection with the other felony offense. United States v. West, 643 F.3d 102, 110, 112-13 (3d Cir. 2011).

These first two requirements are not at issue. Defendant has acknowledged his possession of a firearm as part of his guilty plea and does not contest that his drug possession, given his prior criminal history, qualifies as a felony. Defendant contends, however, that his firearm possession was not "in connection" with his drug possession and therefore the enhancement is inapplicable.[7]

---

[7] Defendant makes two additional arguments, both of which the Court rejects. First, Defendant argues against application of the enhancement because it is inconsistent with his plea agreement. It is well-settled, however, that the Court has its own independent obligation to determine the facts relevant to sentencing and is not bound by either the government's recommendations or any plea agreement. United States v. Garcia, 78 F.3d 1457, 1462 (10th Cir. 1996); United States v. Mendoza-Lopez, 83 F. App'x 883, 885 (9th Cir. 2003).

Second, while acknowledging that this Court may consider inadmissible evidence if it bears sufficient indicia of reliability, Defendant argues that the enhancement may not be applied based only on facts in the pre-sentence report, "culled" from the police report of the arrest. The Court's factual findings are not based, however, on snippets from the pre-sentence report. Rather, these findings are based on a direct review of the relevant police arrest report, the

---

physical evidence presented to the Court during the 9/16/2011 hearing, and the police lab report. The police report detailing Defendant's arrest was made just one day after the arrest and is clear and detailed.  It is also consistent with the physical drug evidence gathered after the arrest, which the Court examined during the 9/16/2011 hearing, and the laboratory report.  The police report, standing alone, has sufficient indicia of reliability, given its detail and the close time between the events at issue and their memorialization in the report, to be considered by the Court at sentencing.  United States v. Leekins, 493 F.3d 143, 150-51 (3d Cir. 2007) (holding that police reports are admissible at sentencing if they bear sufficient indicia of reliability, such as containing a high level of detail, reflecting a "fairly full account" of the events); United States v. Smith, 262 F. App'x 435, 438 (3d Cir. 2008) (upholding consideration of police report at sentencing by District Court).  The police arrest report's reliability is further bolstered, however, by its consistency with the physical evidence gathered after the arrest and the lab report.  Leeking, 493 F.3d at 151 (holding that internal consistency of police report with other evidence added to its reliability).  That reliability is even further buttressed by the fact that Defendant does not contest, but rather has affirmatively relied upon, the underlying facts in the police arrest report in his defense at sentencing. United States v. Young, 324 F. App'x 165, 168 (3d Cir. 2009) (upholding district court's determination that police report was reliable, where the defendant provided no evidence in rebuttal to the reports). Likewise, the police lab report, bears sufficient indicia of reliability.  It is a certified New Jersey State Police Office of Forensics Laboratory Report. The analyst issuing the report has sworn to the accuracy, reliability, and objectivity of the procedures employed in performing the analysis, as well as that the procedure is performed on a routine basis within the laboratory.  And, like the police arrest report, its reliability is bolstered by its consistency with the police report and the Court's in-person observation of the physical evidence at issue, as well as Defendant's affirmative reliance on the results. Accordingly, this Court's factual findings are based on

Application Note 14 of the Sentencing Guidelines offers guidance on what type of firearm use or possession meets the "in connection with" requirement.  Generally, the enhancement applies where the firearm "facilitated or had the potential of facilitating, another felony offense or another offense, respectively." U.S.S.G. §2K2.1, Application Note 14.  More specifically, the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Id.  The Third Circuit is in accord with these Guidelines, holding that "the circumstances attendant to drug sales justify a rebuttable inference that weapons are possessed "in connection with" drug trafficking. United States v. Gregory, 345 F.3d 225, 230 (3d Cir. 2003) (quotation omitted).

Applying this standard, and drawing reasonable inferences as this Court is permitted (United States v. Dunbar, 385 F. App'x 132, 133 (3d Cir. 2010)), the Court finds, by a preponderance of evidence, that Defendant was engaged in drug trafficking, and that the sentencing enhancement applies.  In light of the evidence, and Agent McNamara's testimony, which the

---

appropriate sources.

Court found credible and persuasive[8], the notion that the Defendant possessed the drugs at issue for his own personal use is simply not plausible.  As Agent McNamara testified, the circumstances of Defendant's arrest are far more consonant with Defendant selling crack cocaine at various "sets," using his bike for transportation and gun for protection, than with any alternative "personal use" scenario.  Dunbar, 385 F. App'x at 133 (holding that court did not abuse its discretion in finding defendant was drug trafficking when, among other things, he was found possessing drugs separated into nine bags); United States v. Galloway,384 F. App'x 132, 135 (3d Cir. 2010)(holding that district court "correctly found that it was reasonable to infer" from large quantity of cash and "distributable amount of heroin" that drug possession was in connection with firearm possession).

That Defendant was not found with a large quantity of cash on his person does not disturb this conclusion for two reasons.  First, the Defendant's lack of cash does not explain the other numerous facts that all support the determination that Defendant was engaged in drug trafficking.  Second, while possession of a large quantity of cash may be highly probative of drug trafficking, the reverse - that a lack of cash is

---

[8] That Agent McNamara's conclusions are consistent with the Camden County Sheriff's Office's firsthand observations, as evidenced by its initial charging of Defendant with possession with intent to distribute, further bolsters the credibility of his analysis.

particularly probative of possession for personal use - does not necessarily follow.  Agent McNamara testified as much, when he acknowledged that drug dealers often employ a separate individual to handle money.  While Defendant was not observed to have employed an individual in this manner here, that does not preclude the possibility that he did.  In addition, the Court notes that, at 2:25pm in the afternoon when Defendant was arrested, he could have very well just begun selling crack cocaine that day, and not yet have completed any sales.

**III. Conclusion**

The Court's finding, by a preponderance of the evidence, that Defendant was engaged in drug trafficking, and the Court accepts the Probation Office's sentencing enhancement recommendation.


DATED:  <u>October 7, 2011</u>

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE